Bobby Earl LUSK, Petitioner–Appellant,

v.

HARRY K. SINGLETARY, Secretary,
Florida Department of Corrections,
Respondent–Appellee.

No. 91–3394.

United States Court of Appeals,
Eleventh Circuit.

June 22, 1992.

Richard Ware Levitt, New York City, for petitioner-appellant.

Mark C. Menser, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before EDMONDSON, COX and BIRCH, Circuit Judges.

COX, Circuit Judge:

Bobby Earl Lusk was convicted in Florida of first-degree murder and sentenced to death. He filed a 28 U.S.C. § 2254 petition for habeas corpus relief in the Middle District of Florida. The district court granted relief as to the sentence. On appeal, this court reversed and remanded the case to the district court for consideration of the claims which it had not yet addressed. On remand, the district court rejected Lusk's four remaining claims and denied his peti-

tion for a writ of habeas corpus. For the reasons discussed below, we affirm.

### I.  Facts and Procedural History

The factual background of this case was detailed in *Lusk v. Dugger,* 890 F.2d 332 (11th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990). The following summary is limited to those issues currently on appeal.

While a Florida State Prison inmate, Lusk fatally stabbed his fellow inmate Michael Hall. The Supreme Court of Florida accurately reported the facts as follows:

At the Thanksgiving Day noon meal in the Florida State Prison cafeteria on November 23, 1978, Bobby Earl Lusk fatally stabbed inmate Michael Hall. Lusk was serving three consecutive life terms for two convictions of armed robbery with a pistol and a simultaneous conviction of first-degree murder. The victim, Hall, was serving a 30–year sentence for the second-degree stabbing murder of an inmate at Sumter Correctional Institution. Lusk initially made a statement to prison officials that Hall and two other inmates had robbed him in his cell on the morning of the murder, stabbed his mattress several times and threatened him if he reported the incident. He then said he would not take it anymore and resolved to kill one of the men. According to Lusk, he took his homemade knife to the dining hall at lunchtime and stabbed Hall in the back two or three times. (The body had three stab wounds in the back.) He concluded the statement by saying Hall had been sitting when he stabbed him and Hall had thrown a tray at him after the stabbing. Lusk moved to suppress the confession as being involuntary but this was denied.... At trial, Lusk testified and offered self-defense as an explanation for the crime, stating that Hall threatened to "take him out" and that Hall attacked him first with a knife of his own.

*Lusk v. State,* 446 So.2d 1038, 1040 (Fla.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).

The jury found Lusk guilty of first-degree murder. When the jury reconvened for an advisory sentencing hearing, the state argued the presence of four aggravating factors—1) the capital felony was committed by a person under sentence of imprisonment, 2) the defendant was previously convicted of a capital felony, 3) the defendant created a great risk of death to many persons, and 4) the capital felony was especially heinous, atrocious, or cruel. *See* Fla.Stat.Ann. § 921.141(5). In his closing argument, Lusk's attorney pleaded for mercy. The jury returned a recommendation of life imprisonment.

The trial judge, however, overrode the jury's recommendation. He sentenced Lusk to death based upon the presence of the four aggravating factors and lack of any mitigating factors. On appeal, the Florida Supreme Court struck one of the aggravating factors—that Lusk created a great risk of death to many persons—but affirmed the conviction and sentence. *Lusk v. State*, 446 So.2d 1038 (Fla.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). Lusk then filed a petition for collateral review under Fla. R.Crim.P. 3.850. The trial court denied relief and the Florida Supreme Court affirmed. *Lusk v. State*, 498 So.2d 902 (Fla. 1986), *cert. denied*, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 517 (1987). The Florida Supreme Court also denied Lusk's habeas corpus petition. *Lusk v. Dugger*, 518 So.2d 1276 (Fla.1987).

In January 1988, Lusk filed the instant petition seeking habeas relief, challenging both his conviction and sentence. The district court denied relief as to the conviction but vacated the death sentence. On appeal, Lusk challenged the denial of relief as to his conviction. The state cross-appealed the order vacating the death sentence. This court affirmed the district court's denial of relief as to Lusk's conviction but reversed the order vacating the sentence of death. *Lusk v. Dugger*, 890 F.2d at 342. We then remanded the case to the district court for consideration of the four remaining claims in Lusk's habeas petition. On remand, the district court rejected these remaining claims and denied habeas corpus relief. This appeal followed.

## II. Issues on Appeal

1. Whether the sentencing court's failure to ensure that Lusk personally reviewed his pre-sentence report violated his right to due process.

2. Whether the sentencing court believed it could not consider mercy, and if so, whether this violated the Eighth Amendment.

3. Whether a reasonable sentencer could conclude that the murder committed by Lusk was especially heinous, atrocious, or cruel.

4. Whether Florida's death penalty statute unconstitutionally requires the imposition of death where aggravating and mitigating circumstances are equally balanced.

## III. Contentions of the Parties

First, Lusk argues that the sentencing court's failure to ensure that he personally reviewed his pre-sentence report with his attorney violated his right to due process. It is possible that a careful review of the report could have led to the correction of several errors and the introduction of substantial mitigating evidence, thereby affecting the court's decision to override the jury's recommendation and impose the death penalty.

Second, Lusk contends that the sentencing court's statement that it could not permit considerations of "mercy" to affect its decision denied Lusk's right to an individualized sentence in which "notions of mercy, supported by facts, play a part in determining whether a defendant lives or dies." Appellant's Brief at 7–8. Moreover, the court's restrictive view of mercy may have influenced its refusal to recognize the relevant mitigating factors in this case.

Third, Lusk asserts that the "heinous, atrocious, or cruel" aggravating factor was improperly applied to his crime. In this case, the murder did not involve excessive torture and was not otherwise unique among capital felonies.

Finally, Lusk argues that Florida's death penalty statute is unconstitutional because it requires the death penalty unless the mitigating circumstances outweigh the aggravating circumstances. Under this mechanistic approach, the death penalty will be applied in cases in which the aggravating and mitigating factors are equally balanced.

Florida maintains that Lusk's second and fourth claims are procedurally barred because they were not properly raised in state court. Alternatively, the State argues that the district court properly rejected these claims on their merits.

With respect to Lusk's claim that the sentencing court failed to ensure that Lusk personally reviewed his pre-sentence report, there is no such requirement in the Constitution. The alleged failure of Lusk's attorney to review the report with him was properly considered as part of Lusk's claim of ineffective assistance of counsel.

Finally, Florida argues that, in light of this court's narrow standard of review, the sentencing court properly applied state law to the facts of this case to conclude that Lusk's crime was particularly heinous, atrocious, or cruel.

## IV. Discussion

### A. Procedural Bar

■ Before addressing the merits of Lusk's arguments, we must first resolve Florida's argument that the second and fourth claims are procedurally barred. Florida maintains that these issues were not properly raised at trial, on appeal, or in Lusk's Rule 3.850 petition. Appellee's Brief at 23, 28. The record, however, indicates otherwise. Paragraph 15 of Lusk's Rule 3.850 petition argued that:

> Imposition of the death penalty in this case would be cruel and unusual punishment in that:
>
> a. The trial judge found that mercy could not be considered in determining sentence (Sentencing Transcript at 16), when, in fact, mercy is statutorily and

constitutionally an appropriate sentencing criterion;

. . . . .

> d. The trial judge, in assessing the appropriate sentence, found that death was required unless the mitigating evidence outweighed the aggravating evidence, thereby applying a standard which, even if supported by statute, is unconstitutional.

Appendix at 614.

Although no state court reached the merits of these issues, neither the trial court nor the Florida Supreme Court refused to address these questions on the ground that they were procedurally barred. The district court concluded that the claims were not procedurally barred. We agree.

### B. Personal Review of the Presentence Report

■ Citing *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion), Lusk argues that the sentencing court's failure to ensure he personally reviewed his presentence report violated his right to due process. In *Gardner*, the Supreme Court overturned a death sentence which was based on a confidential presentence report that was not fully disclosed to defense counsel.

As one of the grounds in favor of not disclosing the presentence report, Florida argued that the trial court may be relied upon to sentence the defendant responsibly, even if its decision is based on secret information. Justice Stevens wrote that:

> [This] argument rests on the erroneous premise that the participation of counsel is superfluous to the process of evaluating the relevance and significance of aggravating and mitigating facts. Our belief that debate between adversaries is often essential to the truth-seeking function of trials requires us to also recognize the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases.

*Id.* at 360, 97 S.Ct. at 1206. Clearly, the central thrust of *Gardner* is that the de-

fendant's right to due process is violated when the trial court bases its sentencing decision on confidential information which it has neither disclosed to the defense nor provided the defense an opportunity to rebut.

In the case at bar, however, Lusk does not argue that the trial court sentenced him on the basis of undisclosed information. In fact, Lusk concedes that his presentence report was given to his attorney prior to sentencing. Appellant's Brief at 9–10. Rather, Lusk contends that his right to due process is violated because his own attorney failed to review the report with him. As a result of this omission, Lusk claims that several errors in the report were not corrected.

Assuming, *arguendo*, that Lusk's attorney did fail to review the presentence report with him, we believe this failure is more appropriately characterized as a claim of ineffective assistance of counsel rather than as a due process violation under *Gardner*. The Fourteenth Amendment provides that "nor shall any *State* deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1 (emphasis added). Unlike the situation in *Gardner*, the trial court in this case did not withhold the report. The court satisfied *Gardner* by providing a copy of the report to Lusk's attorney. The alleged harm suffered by Lusk was caused by his own attorney's failure to review the report with him; it was not the product of any state action. As the Supreme Court noted in *Strickland v. Washington*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), "[t]he government is not responsible for, and hence not able to prevent, attorney errors...."

■ This court has already reviewed Lusk's allegation that his attorney did not review the presentence report with him as a claim of ineffective assistance of counsel. *Lusk v. Dugger*, 890 F.2d at 339–40. We concluded that, even if his attorney's performance was deficient, Lusk failed to meet the "prejudice" prong of *Strickland* because the alleged inaccuracies in the report were insignificant and did not create a

reasonable probability that a different sentence would have been imposed if the errors had been pointed out to the trial court. *Id.* at 340.

■ Lusk asserts that the trial court had an independent responsibility to ensure—on the record—that Lusk personally reviewed his presentence report prior to sentencing. If we were to hold that the trial court had such a duty, Lusk nevertheless would not be entitled to relief. Requiring trial courts to inquire whether the defendant has reviewed his presentence report would clearly impose a new obligation on states. Such a rule is not dictated by *Gardner* or any other existing precedent. Under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), a new rule generally should not be applied retroactively to cases on habeas review. Because Lusk does not suggest that the rule he advocates is "implicit in the concept of ordered liberty" or otherwise falls within a recognized exception to *Teague*, such a rule would not be retroactively applicable to the case at bar even if we were inclined to adopt it.

### C. Sentencing Court's Refusal to Consider "Mercy"

■ Lusk claims that the trial court refused to consider mercy in violation of the Eighth Amendment. Specifically, he points to the court's statement that "[t]he law of this State does not permit this Court to extend mercy to this Defendant or others convicted of a capital felony." Appendix at 595. Lusk argues that the statement reflected the court's general unwillingness to recognize and consider nonstatutory mitigating circumstances. Appellant's Brief at 32. We disagree.

The trial court's remarks during sentencing reveal that it was willing to consider both statutory and nonstatutory mitigating circumstances.

> There are no mitigating circumstances *either those prescribed by statute or otherwise.*

There are no mitigating circumstances and the aggravating circumstances are clear, abundant, and convincing, which compel a finding and determination by this Court that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.

*The Court has not limited its consideration of mitigating circumstances to only those prescribed by statute,* but has limited its consideration of aggravating circumstances to those specified in Section 921.141, Florida Statutes.

Appendix at 593–94 (emphasis added). Given these statements, we conclude that the trial court acted in accordance with Florida's established practice of considering both statutory and nonstatutory mitigating circumstances. As the Florida Supreme Court has stated, "[w]e have long recognized that the failure to consider nonstatutory mitigating circumstances by a judge or jury is grounds for reversal." *Porter v. Dugger,* 559 So.2d 201, 204 (Fla.1990). We also note Lusk does not claim that he was in any way limited as to the nonstatutory mitigating evidence which he was allowed to introduce during the sentencing phase.

It is clear that the trial court's statement that it would not consider "mercy" was nothing more than an accurate summary of Florida law to the effect that, where there are aggravating circumstances and no mitigating circumstances, death is presumed to be the appropriate penalty and should not be rejected solely on the basis of pity or sympathy for the defendant unsupported by evidence. *See Burr v. State,* 466 So.2d 1051, 1054 (Fla.), *cert. denied,* 474 U.S. 879, 106 S.Ct. 201, 88 L.Ed.2d 170 (1985). *See also Valle v. State,* 581 So.2d 40, 47 (Fla.), *cert. denied,* —— U.S. ——, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991) (holding that "[t]he state may properly argue that the defense has failed to establish a mitigating factor and may also argue that the jury should not be swayed by sympathy"). As in *Burr,* the trial court in this case found that there were a number of aggravating circumstances and no mitigating circumstances, statutory or otherwise. Accordingly, there was no legitimate basis for the jury's recommendation of life rather than death, and

under Florida law the court was justified in disregarding it. *Burr,* 466 So.2d at 1054.

A jury instruction not to consider sympathy has been affirmed by the Supreme Court in *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987). At issue was an instruction telling the jury that it "must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *Id.* at 540, 107 S.Ct. at 838. The Court rejected the argument—similar to the one offered by Lusk—that the instruction would lead the jury to disregard mitigating evidence which suggested that life rather than death was the appropriate punishment. "We think a reasonable juror would ... understand the instruction not to rely on 'mere sympathy' as a directive to ignore *only the sort of sympathy that would be totally divorced from the evidence adduced during the penalty phase." Id.* at 542, 107 S.Ct. at 840 (emphasis added).

■ The Court went on to note that the exclusion of "sympathy" from sentencing deliberations generally worked to the defendant's advantage. Juries are more likely to recommend a harsher punishment out of sympathy for a victim than they are to grant leniency out of compassion for a convicted killer. *Id.* The Eighth Amendment's interest in constraining the capital sentencer's discretion in order to prevent the death penalty from being administered in an arbitrary and capricious manner is best served by excluding extraneous emotional factors. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We conclude that there was no constitutional error in the trial court's refusal to consider "mercy" in the absence of any mitigating circumstances.

### D. Heinous, Atrocious, or Cruel

■ Lusk contends that the sentencing court's conclusion that the murder was especially heinous, atrocious, or cruel—thereby constituting an aggravating circum-

stance[1]—was contrary to the Eighth Amendment. We begin by noting that our standard of review on this question is extremely narrow. "A state court's finding of an aggravating circumstance in a particular case ... is arbitrary or capricious [in violation of the Eighth Amendment] if and only if no reasonable sentencer could have so concluded." *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

In this case the sentencing court found that:

> [T]he premeditated stabbing, three times of this victim who bled to death from his wounds inflicted by a hand-made long steel knife, while both the victim and Defendant were in prison and which was committed in the presence of numerous other prison inmates at Florida State Prison during their noon Thanksgiving Day meal, followed by loud threats of a repetition of similar action toward others is shockingly evil, outrageously wicked and vile, and was designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others.

Appendix at 590–91. Granting those facts the presumption of correctness to which they are entitled, we hold that a reasonable sentencer properly could find that the crime committed by Lusk was "especially heinous, atrocious, or cruel."

### E. Constitutionality of Florida's Death Penalty Statute

 Lusk's final argument is that Florida's death penalty statute is unconstitutional because it mandates a sentence of death if aggravating and mitigating circumstances are of equal weight. *See* Florida Statutes § 921.141(3). "The statute therefore imposes a death sentence even if, after a conscientious consideration of the evidence, death is not clearly the appropriate sentence." Appellant's Brief at 50.

We decline to address the constitutionality of applying Florida's death penalty statute when aggravating and mitigating

factors are equally balanced because that hypothetical situation is not presented in the case at bar. Here, the sentencing court found that "[t]here are no mitigating circumstances and the aggravating circumstances are clear, abundant, and convincing, which compel a finding and determination by this court that there are insufficient mitigating circumstances to outweigh the aggravating circumstances." Appendix at 594.

### V. Conclusion

For the reasons discussed above, the judgment of the district court denying Lusk's petition for a writ of habeas corpus is affirmed.

AFFIRMED.

---

1. We interpret this aggravating circumstance in light of the Florida Supreme Court's narrowing construction. *See, e.g., Bertolotti v. Dugger*, 883 F.2d 1503, 1526–27 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990).