639 So.2d 1 (1994)
William REAVES, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 79575.
Supreme Court of Florida.
April 7, 1994.
Rehearing Denied June 10, 1994.
*2 Jonathan Jay Kirschner of Carbia, Kirschner & Garland, P.A., Fort Pierce, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., and Sara D. Baggett, Asst. Atty. Gen., West Palm Beach, for appellee/cross-appellant.
PER CURIAM.
William Reaves appeals his conviction for murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
*3 The victim, Deputy Sheriff Richard Raczkoski, at or about 3 a.m. on September 23, 1986, responded to a 911 call from a phone booth outside a Zippy Mart near Vero Beach. The deputy acknowledged his arrival at the Zippy Mart and inquired about outstanding warrants on William Reaves. Within minutes of the call, the deputy was found near the phone booth with four gunshot wounds from which he died later that morning. A piece of paper inside the deputy's vehicle had written on it: William Reaves, black male, 4336 38th Avenue, date of birth 12/30/48.
Witness Whitaker, who discovered the deputy, testified that he saw a black man wearing red shorts and a white T-shirt running from the scene in a manner similar to men in Vietnam under fire. (William Reaves served in Vietnam.) Witness Hinton was ruled unavailable to testify, section 90.804(1)(b), Florida Statutes (1991), and his testimony from the 1987 trial[1] was read into the record. According to Hinton, Reaves, wearing red shorts and carrying a gun wrapped in a white T-shirt, came to his apartment after the shooting and said: "I done ... up. I just shot a cop, I just shot a police." Hinton testified that Reaves quoted the deputy as saying, "Don't shoot me. Don't shoot me. Don't kill me," to which Reaves responded, "One of us got to go. One of us got to go, me or you." Hinton had no trouble understanding Reaves; his speech was not slurred and he appeared to be in full control of his faculties. Witness Fredell testified that Reaves was wearing red shorts and a white T-shirt on the afternoon prior to the early-morning murder and did not appear to be under the influence of alcohol or drugs.
Detective Pisani quoted Reaves as stating that while he and the deputy were conversing, a gun fell out of Reaves' shorts. The deputy put his knee on the weapon, Reaves pushed the knee back, picked up the gun, refused to surrender it, and in a panic and "wired on cocaine" shot the deputy as he was running away. Reaves admitted that he emptied the seven-round clip of his .38 when he fired. A firearms expert testified that Reaves' gun was a type that required a pull of the trigger each time it was fired; it was not an automatic.
The jury convicted Reaves of premeditated first-degree murder and recommended death by a vote of ten to two. The trial judge imposed the death sentence, finding three aggravating circumstances[2] and no statutory mitigating circumstances. The judge found three nonstatutory mitigating circumstances.[3]
Reaves presents sixteen issues, twelve in the guilt phase and four in the penalty phase.
Reaves argues to this Court that several statements made by Hinton, under oath, prior to his 1987 trial testimony,[4] were inconsistent with his 1987 trial testimony and should have been admitted pursuant to section 90.806, Florida Statutes (1991).[5] We *4 agree that Hinton's prior inconsistent testimony should have been admitted, but we find that the trial court's exclusion of the testimony was harmless error. Hinton's inconsistent statements pertained to details and did not repudiate the significant aspects of his testimony.
Reaves challenges the trial judge's rulings regarding jurors Dudley, Hambleton, Mills and Kaplan. In response to Reaves' voir dire questioning, prospective jurors Dudley and Hambleton indicated that they would automatically recommend a death sentence if a person were found guilty of murder. Based on these answers, Reaves asserts that the trial judge's refusal to strike Dudley and Hambleton for cause was an abuse of discretion. Under Bryant v. State, 601 So.2d 529, 532 (Fla. 1992), when a venire-person expresses an opinion which indicates a substantial inability to properly perform a juror's duties either the prosecutor or the judge must "make sure the prospective juror can be an impartial member of the jury." Our reading of the record shows that both Hambleton and Dudley were properly rehabilitated by the judge and State Attorney respectively[6] and we find no abuse of discretion in the trial judge's denial of Reaves' challenge for cause relative to these jurors.
Reaves further avers that the court improperly granted the state's challenge for cause regarding prospective juror Mills. During voir dire, Mills expressed reluctance in her ability to sentence someone to death, yet she also indicated that she could follow the judge's instructions relevant to a capital sentencing. We have previously held that a trial judge must determine if a prospective juror's opinions will act as an impediment in the proper performance of her duties. Trotter v. State, 576 So.2d 691, 694 (Fla. 1990). Our review of the record shows that the court granted the state's challenge based on what it considered Mills' "at best" equivocal answers. We find that the transcript fairly and adequately supports the trial judge's findings and there was no abuse of discretion.
Reaves argues that the court erred by allowing the state to peremptorily challenge, in a racially discriminatory way, Kaplan, the panel's sole Jewish member. We find Reaves' contest of prospective juror Kaplan meritless. Nothing in the record indicates, nor proves that the state used Kaplan's racial or religious background as grounds for challenge. The record indicates that the state's challenge was based on what it perceived as Kaplan's misunderstanding of the burden of proof. Accordingly, we find no error in the court's granting of the challenge.
Reaves argues that the trial judge erred when he refused to admit evidence of "Vietnam Syndrome" in the guilt phase of the trial to support his "excusable homicide" defense.[7] We find no error. We said in Bunney v. State, 603 So.2d 1270, 1273 & n. 1 (Fla. 1992), that "evidence of certain commonly understood conditions that are beyond one's control ... should also be admissible" in the guilt phase of the trial; but "evidence relating to a general mental impairment or other esoteric condition" is not. There is no evidence in this record to support Reaves' assertion that "Vietnam Syndrome" is a commonly understood condition; it therefore was properly excluded in the guilt phase. We find, moreover, that even if this evidence's exclusion was error, it was harmless. There is no reasonable possibility that it would have *5 affected the jury's verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Reaves argues that the state attorney's office should have been disqualified from prosecuting him on his retrial. We disagree. The trial judge found that Reaves was properly shielded from his former prosecutor, Mr. Colton (who was earlier Reaves' public defender). The judge's findings are supported by competent, substantial evidence and we affirm them.
Reaves raises several issues regarding the trial judge's denial of his motions for mistrial based on alleged errors in the prosecutor's closing argument. First, he brings to our attention the fact that the prosecutor referred to him as a "cocaine seller." This reference was indeed error, but it was not made a feature of the trial and we find it harmless.[8]DiGuilio. Reaves next complains that the prosecutor made a prohibited golden rule argument when he said: "Mr. Kirschner wants to argue that this is a panic shooting.... Ladies and gentlemen, I submit to you that if you had a gun in your face in a store after hours at 3:00 in the morning is [sic] more than an eternity because...." The trial judge interrupted and directed the jury to disregard the statement and directed the prosecutor not to put the jury "in any position." Thus the error was immediately cured. Singularly or cumulatively, these errors fall short of the standard for granting a reversal: Whether the error was so prejudicial as to "vitiate the entire trial." State v. Murray, 443 So.2d 955, 956 (Fla. 1984).
Reaves also argues that prosecutor counsel acted improperly when he "portrayed the slain deputy speaking from the grave." We find no error when this assertion is viewed in context: Defense counsel argued in closing that it made no sense for Reaves to shoot the deputy because the deputy had already phoned in a warrant check on Reaves; the logical conclusion therefore was that the murder was not premeditated. We find that the prosecutor's assertion, that the deputy was the only person who could say from a witness stand that Reaves was the person who shot him at the Zippy Mart, was proper rebuttal; it reminded the jury that Reaves had a motive to kill the deputy.
Reaves raises as his sixth claim that the introduction of evidence that he attempted to sell cocaine was error. The state argues that the attempted sale of cocaine, upon alighting from a bus in Georgia, was a part of Reaves' plan to finance his escape and was an integral part of his flight from the crime scene; it thus was relevant to flight and an incident in the chain of events.[9] We do not find the attempted sale of cocaine relevant to the instant murder; it should have been redacted from Reaves' confession and omitted from the evidence of flight. We nevertheless find the admission of this evidence harmless error. DiGuilio.
We find no merit to Reaves' claim that the trial judge lacked jurisdiction to hear his case because he was a county judge from another circuit. Judge Balsiger was appointed by direct order of this Court.[10] We also find no merit to Reaves' assertions that the jury instructions on premeditation and excusable homicide were inadequate; the standard jury instructions were given.
Reaves objects to the admission of a color photograph of the deputy taken after an autopsy had been performed. We find nothing inflammatory about the photo. The photo moreover was relevant to the medical examiner's testimony and to show three bullets lying just under the skin, which caused extensive internal hemorrhage to vital organs because of the mushroom-headed shape the bullets assumed after impact. The bullets are indicated by a large circle of blue color under the skin. Reaves also objects to the admission of the clothes the deputy was *6 wearing when shot. The clothes were relevant to show that the deputy was identifiable as an officer when he asked Reaves to surrender his gun. We find no abuse of discretion in their admission.
There is no merit to Reaves' claim that the jury venire should have been stricken because it was drawn from registered electors rather than from licensed drivers. Drawing jurors from licensed drivers was not required at the time of Reaves' trial. Ch. 91-424, Laws of Fla. Section 40.01, Florida Statutes (1991), which directs that jurors shall be taken from the pool of licensed drivers, does not become effective until January 1, 1998. See § 40.01, Note, Fla. Stat. (Supp. 1992). Reaves' retrial occurred in February 1992.
We find no error in the trial judge's decision not to appoint co-counsel for Reaves. There is no general requirement that a defendant must have co-counsel in capital cases, and the judge did not abuse his discretion in failing to appoint additional counsel. We also find no error in the trial judge's determination that letters between the prosecutor and an expert witness that contained work product were privileged and not subject to discovery.
Reaves argues that the trial court improperly found the aggravating factor of heinous, atrocious or cruel. We agree with Reaves that the deputy's death from gunshot wounds was not heinous, atrocious, or cruel. This is not a crime unnecessarily torturous to the victim or set apart from the norm in capital cases. We find this error harmless, however, in view of the two other strong aggravating factors found[11] and relatively weak mitigation. There is no possibility the jury would have recommended or the judge would have imposed a lesser sentence.
We find no abuse of discretion in the trial judge's failure to find statutory mental mitigating factors. There is competent, substantial evidence upon which he could have rejected the testimony of Reaves' expert on these points in favor of the state's expert. We also find no abuse of discretion in the trial judge's finding of only three nonstatutory mitigating factors. Although Reaves proffered nonstatutory factors in greater number, the judge reasonably grouped several proffered mitigating factors into three. We finally find no constitutional infirmity in the statute.
We therefore affirm the conviction and sentence.[12]
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Reaves was convicted of the deputy's murder in August 1987. This Court reversed the conviction because Reaves' prosecutor formerly represented Reaves as his public defender. Reaves v. State, 574 So.2d 105 (Fla. 1991). Reaves' retrial occurred in February 1992.
[2] Reaves was previously convicted of a felony involving the use or threat of violence to the person; the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; and the capital felony was especially heinous, atrocious, or cruel. § 921.141(5)(b), (e), (h), Fla. Stat. (1985).
[3] Reaves was honorably discharged from military service, had a good reputation in his community up to the age of sixteen, was a considerate son to his mother, and was good to his siblings.
[4] See supra note 1.
[5] Section 90.806, Florida Statutes (1991), provides:

(1) When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time inconsistent with his hearsay statement is admissible, regardless of whether or not the declarant has been afforded an opportunity to deny or explain it.
(2) If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.
[6] After Hambleton stated his willingness to automatically impose the death penalty, the judge explained the process of weighing aggravating and mitigating circumstances, and then asked Hambleton if he was capable of following the law as instructed. Hambleton answered in the affirmative. Upon being questioned by the State, Dudley indicated that he understood that no one could automatically be sentenced to death and that he must look at all evidence and follow the judge's instruction on mitigating and aggravating circumstances in considering the proper punishment.
[7] Section 782.03, Florida Statutes (1991), provides:

Excusable homicide.  Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.
[8] Reaves disclosed in his confession that he was apprehended when he attempted to sell cocaine to an undercover agent in a Georgia bus station the day after the shooting.
[9] This evidence was contained in Reaves' confession to the murder.
[10] Florida Supreme Court Order 92A-046, December 30, 1991. The record demonstrates that Judge Balsiger handled this first-degree murder trial in an exemplary manner.
[11] Reaves was convicted of holding a gun to the head of a hotel clerk during two separate robberies and punching a correctional officer in the face while in jail. In addition, the instant murder was committed to avoid or prevent lawful arrest.
[12] We do not address the issue raised by the State's cross-appeal; in view of our affirmance, it is moot.